**Martin Wayne WHITTON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–85–318–CR.**

Court of Appeals of Texas,
Eastland.

May 22, 1986.

Dean White, Canton, for appellant.

Tommy Wallace, Criminal Dist. Atty., Canton, for appellee.

McCLOUD, Chief Justice.

Appellant was convicted of aggravated robbery, and the jury assessed his punishment at confinement in the Texas Department of Corrections for 15 years. Appellant's only ground of error asserts that the trial court erred at the punishment phase of the trial by refusing to permit the jury to hear the testimony of Dr. Jerry Heard Patrick, a psychologist, "concerning the rehabilitative needs" of the appellant. We affirm.

Appellant argues that the purpose of the excluded testimony was to "aid the jury and enlarge their knowledge of possibilities that might be considered by them in assessing the rehabilitative needs of the appellant." Dr. Patrick testified by bill of exception that appellant would probably "profit most from intensive individual psychotherapy, probably some group psychotherapy, with careful supervision probably with a probation officer or someone with the power of the Court." Dr. Patrick also stated that "this could best be done where he has the opportunity to make individual decisions, which I don't think he would be able to make in any forced situation such as the prison system." The witness did not state that it was his opinion that the appellant should receive "probation" rather than "imprisonment." However, it is clear that the essence of the excluded opinion was that probation, rather than imprisonment, would be best for appellant.

Appellant cites TEX.PENAL CODE ANN. sec. 1.02 (Vernon 1974), which provides in part that the provisions of the code are intended and shall be construed to achieve, among others, the following objectives:

(1) to insure the public safety through:

(A) the deterrent influence of the penalties hereinafter provided;

(B) the *rehabilitation* of those convicted of violations of this code; and

(C) such punishment as may be necessary to prevent likely recurrence of criminal behavior; (Emphasis added)

Appellant argues that to exclude the tendered testimony of Dr. Patrick, which sheds light upon the rehabilitation prospects of appellant, denies him the right to present evidence relative to one of the stated objectives of the Penal Code.

In *Clemmons v. State*, 638 S.W.2d 657 (Tex.App.—Fort Worth 1982, no pet'n), when confronted with the question at issue, the court stated:

In *Hopkins* the court expressed a concern that, in some cases, conflicting opinions of experts do not benefit, but rather confuse, jurors. For instance, in this case admitting the appellant's witness' testimony would have invited the State to

respond with its own expert witness. Where would this leave the jury?

There are more traditional means of demonstrating to the jury an accused's likelihood of more positively responding to probation as opposed to imprisonment. Here, appellant's counsel called appellant's parents and grandmother to attest to his being worthy of probation. Appellant himself testified to his understanding of the probation terms and his willingness to abide by them.

The court in *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.1972), was concerned with the admissibility of the opinion of a psychiatrist regarding the credibility of the State's witness. The court said:

The purpose of expert testimony is to supply knowledge which would not ordinarily be available to the trier of fact. While psychiatric information is not known by most laymen, there is still available to the jury the usual impeachment evidence such as criminal convictions and prior inconsistent statements to assist in the determination of credibility. Thus, unlike the case of highly technical issues, the jury, even without psychiatric testimony will not be left "in the dark." In fact, after being subjected to several conflicting, equivocating and highly technical psychiatric opinions, the jury may actually be more confused than before. We fail to perceive the benefit to be gained from "an amateur's voyage on the fog-enshrouded sea of psychiatry."

The court in *Schulz v. State*, 446 S.W.2d 872 (Tex.Cr.App.1969), which involved the question at issue, recognized the problem and stated:

The trial court did not err in refusing to permit Dr. Holbrook to testify before the jury that it would be better for appellant to be placed on probation. If such testimony is allowed, the State would be justified in seeking to put on an expert, perhaps a sociologist or penologist to prove that it would be better for the defendant to serve time in a penal institution. Then further testimony would no doubt be offered by both sides on the relative values of probation compared to confinement.

In almost every case, the defendant could produce an expert who would give an opinion that psychotherapy and counseling in an unstructured environment such as probation would rehabilitate the defendant better than our prison system. This would necessitate the State presenting an expert to testify that the Texas Department of Corrections does a better job of rehabilitating convicted persons. As pointed out in *Schulz*, no doubt further testimony would be offered by "both sides on the relative values of probation compared to confinement."

Rehabilitation of convicted persons is only one of the three methods stated in Section 1.02 of the Penal Code for achieving public safety. Also mentioned there is the deterrent influence of penalties and the punishment necessary to prevent likely recurrence of criminal behavior. If appellant's contention is valid, then a logical argument can be made that at the punishment phase of a trial both the defendant and the State may present "opinion" evidence of experts (psychiatrist, psychologist, sociologist, penologist) on what type and degree of punishment (regular probation, shock probation, deferred adjudication, fine, short imprisonment, extended imprisonment) should be assessed against the defendant when considering the factors of the rehabilitation of the defendant, the deterrent influence of the penalty, and the assessment of a penalty that would likely prevent the recurrence of criminal behavior. If experts are permitted to give their opinion on these matters, it would open up a confusing "battle of the experts."

The jury heard the evidence and arguments presented at trial, observed the appellant during the trial, and heard testimony of appellant's lay witnesses during the punishment phase. The opinion of an expert advocating the merits of probation versus imprisonment would not assist the jury in reaching a decision on the issue of punishment. Instead, this evidence would tend to cloud the issues by injecting collat-

eral issues, such as the effectiveness of our criminal justice system. Therefore, we conclude that this type of opinion testimony would neither be of assistance nor benefit to the jury; rather, it would tend to confuse the jurors. The court did not err in excluding the testimony.

■ We point out that some of Dr. Patrick's testimony would have been admissible. *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967). However, the tendered bill of exception improperly contained both the inadmissible as well as the admissible testimony. See *Dallas Oil and Gas, Inc. v. Mouer*, 533 S.W.2d 70 (Tex.Civ.App.— Dallas 1976, no writ).

The judgment of the trial court is affirmed.